IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 10, 2013

# IN RE LOGAN M. S. ET AL.[1]

**Appeal from the Juvenile Court for Wilson County**
**No. 7194     Barry Victor Tate, Judge**

_____

**No. M2013-00309-COA-R3-PT - April 25, 2013**

_____

Father appeals the termination of his parental rights. Finding no error, we affirm the trial court's decision.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, M.S., P.J., and RICHARD H. DINKINS, J., joined.

Thomas A. Maynard, Hermitage, Tennessee, for the appellant, Billy S.

Robert E. Cooper, Jr., Attorney General and Reporter, and Alexander S. Rieger, Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

**OPINION**

BACKGROUND

In this matter, Billy S. ("Father") appeals the termination of his parental rights to Logan S. After his birth in July of 2006, Logan was placed with Father's mother ("Grandmother") because Logan's mother had drugs in her system when he was born.[2] From the day before Logan's birth to the October 19, 2012 termination hearing, Father had numerous run-ins with the law which resulted in a large number of guilty pleas to a variety of offenses, including theft of merchandise (three), evading arrest, resisting arrest, use of

_____

[1]This Court has a policy of protecting the identity of children in parental termination cases by initializing the last names of the parties.

[2]Logan's mother is not involved in this appeal.

inhalants (huffing), lack of vehicle registration, theft of property, failure to appear in court (two), criminal trespass, burglary of an automobile (two), burglary, aggravated burglary, possession of drug paraphernalia and simple possession. By the time of the termination hearing, Father had been incarcerated for half of Logan's life.

On March 10, 2011, the police pulled Grandmother over for driving erratically; Logan was in the car. The police thought she was under the influence of a substance.[3] Logan was found dependent and neglected and placed with a relative. Father was incarcerated at the time. Several permanency plans were developed for Father.

On June 14, 2012, the Department of Children's Services ("DCS") filed a petition to terminate Father's parental rights. The only witnesses to testify at the hearing were Father and Whitney Shelton, Logan's case manager at DCS. Father testified to his many encounters with the legal system. He also testified that when he was not incarcerated he lived with his mother, that he was a good father and that he had a bond with Logan. Ms. Shelton testified to the deplorable and dangerous conditions of Grandmother's home, that Father took classes in prison that were acceptable to the Department, and that Father's bond with Logan was minimal. She also testified that, when Logan was removed from Grandmother, "he had behavior issues, didn't really have any boundaries, didn't have any sort of structure. I guess the best way to represent that would be as if he was feral." Logan was delayed in speech and motor skills and delayed educationally. At the time of the hearing, Ms. Shelton said that Logan's behavior had improved and that he was in a special education classroom. His foster parents enrolled him in therapy and were "very in tune with his needs." Logan had a "strong bond with them."

The trial court terminated Father's parental rights, finding that DCS had proved, by clear and convincing evidence, the grounds of "Abandonment By Incarcerated Parent - Visitation," "Abandonment By Incarcerated Parent - Failure to Support," "Abandonment By Incarcerated Parent - Wanton Disregard," and "Persistent Conditions." The court also found by clear and convincing evidence that the termination of Father's parental rights was in Logan's best interest. Father appealed, claiming the evidence did not support the trial court's decision.

STANDARD OF REVIEW

A parent's right to the care, custody, and control of their child is a recognized liberty

---

[3]According to the dependency and neglect petition filed by the Department of Children's Services on March 15, 2011, Grandmother tested positive for "Benzodiazepines, Methamphetamines, Opiates and Oxycodones."

interest protected by the federal and state constitutions. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174 (Tenn. 1996). Consequently, the state may interfere with parental rights only if there is a compelling state interest. *Nash-Putnam*, 921 S.W.2d at 174-75 (citing *Santosky v. Kramer*, 455 U.S. 745 (1982)).

Tennessee's termination statutes identify situations in which the state's interest in a child's welfare justifies interference with a parent's constitutional rights. *In re W.B., IV*, No. M2004-00999-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005) (citing Tenn. Code Ann. § 36-1-113(g)). To support the termination of parental rights, petitioners must prove both the existence of at least one of the statutory grounds for termination and that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); *In re Audrey S.*, 182 S.W.3d 838, 860 (Tenn. Ct. App. 2005). A trial court is only required to find one statutory ground in order to terminate parental rights. *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003).

Because of the fundamental nature of the parent's rights and the grave consequences of the termination of those rights, courts require individualized decision making and a higher standard of proof in deciding termination cases. *See Santosky*, 455 U.S. at 769; *In re Swanson*, 2 S.W.3d 180, 188 (Tenn. 1999); *In re M.W.A ., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Thus, both the grounds for termination and the best interest inquiry must be established by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable, and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004) (citations omitted). Such evidence "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." *Id*.

In light of the heightened burden of proof required by Tenn. Code Ann. § 36-1-113(c)(1), a reviewing court must adapt the customary standard of review set forth by Tenn. R. App. P. 13(d). *Id*. at 654. First, we review the trial court's findings of fact de novo with a presumption of correctness unless the evidence preponderates otherwise, in accordance with Tenn. R. App. P. 13(d). *Id*. Next, we must determine whether the facts, as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements necessary to terminate parental rights. *Id*.

ANALYSIS

Tenn. Code Ann. § 36-1-102(1)(A)(iv) defines abandonment:

A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, *or the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child.*

(Emphasis added). The statutory language referencing wanton disregard is not limited by the four-month requirement at the beginning of the section. *In re Audrey S.*, 182 S.W.3d at 871. The language of the "wanton disregard" provision does, however, require incarceration "at or near the time of the filing of the termination petition." *Id.* at 865.[4] Although Tenn. Code Ann. § 36-1-102(1)(A)(iv) does not specifically define "wanton disregard," Tennessee courts have held that a parent's drug abuse and criminal activity can constitute a wanton disregard for the welfare of the child. *Id.* at 867-68; *see also In re H.A.L.,* No. M2005-00045-COA-R3-PT, 2005 WL 954866, at *6 (Tenn. Ct. App. Apr. 25, 2005). The facts in the record clearly and convincingly demonstrate a wanton disregard for Logan's welfare.

Once grounds for termination are found, we must examine whether it is in the best interest of the child to sever the parent-child relationship. Tenn. Code Ann. § 36-1-113(i) contains nine, non-exclusive statutory factors for courts to consider when conducting the best interest analysis. Pursuant to these factors, the trial court made specific findings of fact to support its conclusion that termination of Father's parental rights was in the child's best interest: Father engages in behaviors that render him "unable to care for the child in a safe and stable manner," Father "has no meaningful relationship with the child," Father has not contributed to the child's support "in a consistent and adequate manner," Father "has not made changes to his conduct or circumstances such that it would be safe to return the child to his care," changing caregivers "will have a detrimental effect on the child," and "[t]he child has established a strong bond" with his caregivers. An examination of the record reveals clear and convincing evidence supporting the trial court's conclusion that terminating Father's parental rights is in Logan's best interest.

The trial court's termination of Father's parental rights is affirmed. Costs of appeal are assessed against Father, for which execution may issue if necessary.

---

[4]The termination petition alleged in paragraph 4 that Father was incarcerated in the Wilson County jail. Father's answer to the petition admitted the averments in paragraph 4.

-4-

_____
ANDY D. BENNETT, JUDGE